O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PAMELA S. G., an Individual,

          Plaintiff,

          v.

ANDREW M. SAUL[1], Commissioner of
Social Security,

          Defendant.

Case No.: 8:18-00335 ADS

MEMORANDUM OPINION AND ORDER

## I.    **INTRODUCTION**

      Plaintiff Pamela S. G.[2] ("Plaintiff") challenges Defendant Nancy A. Berryhill,

Acting Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant")

denial of her application for a period of disability and disability insurance benefits

---

[1] On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is
automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).
[2] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

("DIB").  Plaintiff contends that the Administrative Law Judge ("ALJ") improperly evaluated the medical evidence, as well as Plaintiff's credibility and subjective complaints.  For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.[3]

## II.    FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this appeal.  Prior to filing her application for social security benefits on September 23, 2014, Plaintiff last worked on October 11, 2011, her alleged disability onset date. (Administrative Record "AR" 169-172).  Plaintiff's application alleges disability based on "spine surgery-lumbar, pain and weakness on right side of body, limited walking and limited standing." (AR 76).  Plaintiff's employment history indicates that she worked as a Human Resources director from 1997 until her cessation of work in 2011.  (AR 214). In April 2014, Plaintiff returned to work full-time as a Human Resources generalist but stopped working on August 20, 2014.  Plaintiff testified that she stopped working because she had to have surgery, "but I could have continued working if I didn't have my surgery." (AR 52).  Plaintiff underwent a spinal laminectomy at L4-5 on August 21, 2014.  (AR 309-310).

According to Plaintiff's testimony, she has suffered from chronic back and leg pain since she suffered a fall in 2011.  (AR 54-58).  Since 2011, she has undergone two knee surgeries and two back surgeries, as well as received epidural injections.  Id.

---

[3] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Docket("Dkt.") Nos. 9, 13].

## III. **PROCEEDINGS BELOW**

### A. **Procedural History**

Plaintiff filed a claim for Title II social security benefits on September 23, 2014, alleging disability beginning October 4, 2011 (AR 86, 169). Plaintiff's DIB application was denied initially on November 13, 2014 (AR 98-102), and upon reconsideration on January 22, 2015 (AR 104-108). A hearing was held before ALJ Helen E. Hesse on November 16, 2016. (AR 30-75). Plaintiff, represented by counsel, appeared and testified at the hearing, as well as medical consultant Eric D. Schmitter, M.D., via telephone, and vocational consultant Alan Ey. Id.

On December 13, 2016, the ALJ found that Plaintiff was " not disabled" within the meaning of the Social Security Act.[4] (AR 10-29). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on February 14, 2018. (AR 1-4). Plaintiff then filed this action in District Court on February 27, 2018, challenging the ALJ's decision. [Dkt. No. 1].

### B. **Summary of ALJ Decision After Hearing**

In the ALJ's decision of December 13, 2016 (AR 10-29), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[5] 20 C.F.R. § 404.1520(a)(4). At **step one**, the ALJ found

---

[4] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?

that Plaintiff had not been engaged in substantial gainful activity since October 4, 2011, the alleged onset date.[6]  (AR 15).   At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) grade one spondylolisthesis L4-5, status post laminectomy in 8/2014, status post fusion in 8/2015; (b) status post bilateral knee arthroscopies in 2013; and (c) morbid obesity.  (AR 15).  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  (AR 16).

The ALJ then found that Plaintiff had the following Residual Functional Capacity[7] ("RFC") from October 4, 2011 through August 21, 2014 (the date of Plaintiff's first spinal surgery):

> [P]erform light work as defined in 20 CFR 404.1567(b), with the following additional limitations: can  sit for six hours out of an 8-hour day and stand and/or walk for two hours out of an 8-hour day, with normal workday breaks; can occasionally lift 20 pounds, frequently lift 10 pounds; can occasionally climb stairs, bend, balance, stoop, kneel, crouch, or crawl; is precluded from climbing ladders, ropes or scaffolding; and precluded from working at unprotected heights.

---

If so, the claimant is automatically determined disabled.  If not, proceed to step four. Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

[6] The ALJ found Plaintiff's four-month period of work, from April 2014 – August 2014, to be an "unsuccessful work attempt" under 2 C.F.R. § 404.1574(a)(1), which therefore does not constitute disqualifying substantial gainful employment.  (AR 15).

[7] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  <u>See</u> 20 C.F.R. §§ 404.1545(a)(1), 416.945(1)(1).

1       For the period from August 22, 2014 through the date of the ALJ's

2  decision, the ALJ found that the Plaintiff had the following RFC:

> [P]erform sedentary work as follows: can sit for six hours out of 8-
> hour day and stand and/or walk for two hours out of an 8 hour day,
> with normal workday breaks; can occasionally lift 10 pounds,
> frequently lift less than 10 pounds; can occasionally climb stairs,
> bend, balance, stoop, kneel, crouch, or crawl; is precluded from
> climbing ladders, ropes or scaffolding; and precluded from
> unprotected heights.

7  (AR 16).

8       At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the

9  ALJ found that Plaintiff was capable of performing past relevant work as a personnel

10  manager. (AR 23). The ALJ noted, "[t]his work does not require the performance of

11  work-related activities precluded by the claimant's residual functional capacity..." Id.

12  The ALJ did not proceed to **step five**. (AR 23-24). Accordingly, the ALJ determined

13  that Plaintiff had not been under a disability, as defined in the Social Security Act, from

14  October 4, 2011 through December 16, 2016. (AR 24).

15  **IV.**   **ANALYSIS**

16      **A.**  **Issues on Appeal**

17       Plaintiff raises two issues for review: (1) whether the ALJ properly

18  evaluated/considered the medical evidence of record; and (2) whether the ALJ properly

19  evaluated Plaintiff's credibility and subjective complaints. [Dkt. No. 17 (Joint

20  Stipulation), 2-3]. Specifically, Plaintiff contends the ALJ erred in her assessment of

21  whether Plaintiff's impairments met or medically equaled a listing and in giving greater

22  weight to the testimony of medical consultant Eric Schmitter, M.D., than to that of

23  Plaintiff's treating physician Jeffrey Deckey, M.D. In addition, Plaintiff contends the

24

ALJ improperly discounted Plaintiff's testimony regarding the nature and severity of her conditions.

### B. **Standard of Review**

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not

substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

## C. **Whether The ALJ Properly Evaluated The Medical Evidence**

Plaintiff makes two claims of error with regard to the ALJ's assessment of the medical evidence. First, Plaintiff contends that the ALJ did not properly analyze whether Plaintiff's medical conditions met or medically equaled a listing. Second, Plaintiff contends that the ALJ erred in dismissing the opinion of her treating physician.

### 1. The ALJ Properly Evaluated Step Three

At step three of the five-step sequential evaluation process to assess whether a claimant is disabled, the ALJ determines whether a claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings"). The Social Security Administration, at step three, awards benefits to the most severely impaired claimants, regardless of their actual functional ability. See Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Court §3:18 (2018). A claimant who satisfies the test at the third step is entitled to benefits, and the evaluation ends. Kennedy v. Colvin, 738 F.3d 1172, 1175 (9th Cir. 2013) ("If [the third step is found in favor of a claimant], the claimant is considered disabled and benefits are awarded, ending the inquiry.") The Social Security Administration has developed a lengthy list of impairments "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§404.1525(a); 416.925(a); Sullivan v. Zebley, 493 U.S. 521, 525 (1990); Lester v. Chater, 81 F.3d at 828. Accordingly, the criteria in the step three listings are

"demanding and stringent."  Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994).  They are "purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'"  Kennedy v. Colvin, 738 F.3d at 1176 (quoting Sullivan v. Zebley, 493 U.S. at 532).  The list of automatically disabling impairments has been divided into 14 categories for adults, each category encompassing one body system or one category of disorders.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Part A).  Within each of the 14 categories, the regulations specify one or more impairments, and the degree of each impairment which is considered severe enough to be disabling as a matter of law.

To qualify for a disability under a listing, a claimant carries the burden of establishing that his condition meets or equals all specified medical criteria.  McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).  An impairment that manifests only some of a listing's criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. at 530.  A claimant must satisfy all the criteria in a listing in order to meet that listing.  Id.  Each listed impairment has one or more components, and for each component, the Social Security Administration has prescribed a certain degree of intensity which the agency considers sufficiently serious to disable a claimant.  See Kubitschek & Dubin, supra, §3:20.  If a claimant's impairment does not satisfy every component, then the impairment does not meet the listing.  Sullivan v. Zebley, 493 U.S. at 531; Young v. Sullivan, 911 F.2d 180 (9th Cir. 1990).

Despite this stringent burden upon a claimant to establish disability at step three, Plaintiff here fails to even make the argument that her impairments meet or equal a listing.  Rather, Plaintiff simply argues that the ALJ erred in failing to fully articulate whether Plaintiff did or did not meet every criteria of each listing articulated and that

the ALJ relied upon the medical consultant who did not specify the precise listing he

was referring to when he testified that Plaintiff's impairments did not meet or equal a

listing.

       As noted above, the ALJ found that Plaintiff suffered from the following severe

impairments: "grade one spondylolisthesis L4-5, status post laminectomy in 8/2014,

status post fusion in 8/2015; status post bilateral arthroscopies in 2013; and morbid

obesity." (AR 15). The ALJ's decision stated that Plaintiff's impairments do not meet or

equal a listing as follows:

> After consideration of the evidence, detailed below, the undersigned
> concludes that the claimant's spinal condition and or her knee
> condition do not satisfy the criteria in section 1.04 (disorders of the
> spine), 1.02 (major dysfunction of a joint due to any cause) or 1.03
> (reconstructive surgery or surgical arthrodesis of a major weight-
> bearing joint). The medical evidence shows an ability to ambulate
> effectively (Exhibits 6F, 15F, 16F). The impartial medical expert
> opined that the claimant's physical impairments do not meet or
> medically equal the requirements of any listing.

(AR 16).

       Plaintiff contends the ALJ set forth only two reasons as to why she did not find

that Plaintiff's conditions satisfied a listing: (1) the medical evidence shows an ability to

ambulate effectively and (2) the medical expert's testimony that Plaintiff's conditions

did not satisfy a listing.[8]  Plaintiff, however, fails to acknowledge that, after the above

---

[8] The Court has reviewed and considered but finds no error in Plaintiff's argument that
her attorney was not permitted to cross-examine Dr. Schmitter. As Defendant argues,
the ALJ has discretion to control the scope and limit cross-examination. See Solis v.
Schweiker, 719 F.2d 301, 302 (9th Cir. 1983) ("A claimant in a disability hearing is not
entitled to unlimited cross-examination, but rather 'such cross-examination as may be
required for a full and true disclosure of the facts. 5 U.S.C. § 556(d). The ALJ, therefore,
has discretion to decide when cross-examination is warranted.")  While this Court may
not have so restricted Dr. Schmitter's cross-examination and likely would have allowed
greater latitude in the scope of questioning, it cannot be found that the ALJ abused her
discretion. It would be an abuse of discretion for the ALJ to have precluded all cross-

language, the ALJ spends the following six single-spaced pages of her decision reviewing the records of Plaintiff's various doctors and summarizing Plaintiff's and the medical consultant's testimony and takes all of this evidence into consideration in her decision. Indeed, the ALJ specifically states that her finding at step three "is based upon the testimony of the impartial medical expert and a review of the longitudinal record." (AR 16).

According to Plaintiff, listing 1.04 (disorders of the spine) only requires inability to ambulate effectively in part 1.04(c), and not in the criteria for 1.04(a) or 1.04(b).[9] Plaintiff therefore contends that the ALJ needs to "explain why Plaintiff's having 'inability to ambulate effectively' means Plaintiff does not meet or equal Listing 1.04 when two (2) of the three (3) subparts to said listing do not require such a showing." [Dkt. No. 17, Joint Stipulation, 17]. The ALJ, however, is not required to specify which listings a claimant fails to satisfy. "It is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (noting that "[t]he Secretary's four page 'evaluation of the evidence' is an adequate statement of the

_____

examination of the testifying physician. See Carter v. Barnhart, 58 F. App'x. 304, 305-06 (9th Cir. 2003) ("An ALJ abuses his discretion when he denies a claimant's request to cross-examine a medical source where that source's report is 'crucial' to the ALJ's decision."). Here, however, there is no abuse as the ALJ did permit cross-examination of Dr. Schmitter, but simply limited the scope of the examination.

[9] The Court notes that all of the listings identified by the ALJ (AR 16) fall within the category, "1.00 Musculoskeletal System", which states: "Regardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." 20 C.F.R., Pt. 404, Subpt. P, App. 1 (1.00 (b)(2)(a)).

'foundations on which the ultimate factual conclusions are based.'") (citing <u>Stephens v. Heckler</u>, 766 F.2d 284, 287 (7th Cir. 1985)); <u>see also</u> <u>Abreu v. Astrue</u>, 303 F. App'x. 556, 557 (9th Cir. 2008) (unpub.) (noting that the ALJ is not required to perform a detailed analysis for every possible listing and pointing out that the plaintiff had failed to present evidence that he ever argued before the ALJ that he met or equaled particular listings).

To the extent the record is "unclear" as Plaintiff contends, the Courts finds such an ambiguity to be harmless error.  Plaintiff does not now argue that her medical conditions meet or equal a listing.  [Dkt. No. 17, Joint Stipulation, 18].  Thus, any vagueness as to what specific listings the ALJ found Plaintiff did not meet or equal, fails to satisfy an error causing harm to the Plaintiff.  <u>See</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) (noting that the Court "may not reverse an ALJ's decision on account of an error that is harmless" and that "[t]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") (citing <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009)).

2.    <u>The ALJ Properly Weighed The Medical Opinions</u>

Plaintiff contends it was improper for the ALJ to give greater weight to the opinion of the testifying medical doctor than to the opinion of one of her treating physicians.

a.  <u>Standard for Weighing Medical Opinions</u>

The ALJ must consider all medical opinion evidence.  20 C.F. R. § 404.1527(b).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." <u>Lester v. Chater</u>, 81 F.3d at 830  (citing <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987)).  Where the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear

and convincing" reasons.  Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Bayliss, 427 F.3d at 1216).  In Trevizo, the Ninth Circuit addressed the factors to be considered in assessing a treating physician's opinion.

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).  When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician.  Id. § 404.1527(c)(2)-(6)."

871 F.3d at 675.

"Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins, 466 F.3d at 882).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by setting forth specific and legitimate reasons for rejecting the physician's opinion that were supported by the entire record).

1
　　　　b. <u>The ALJ Gave Specific and Legitimate Reasons, Supported by</u>
2　　　　　　<u>Substantial Evidence, for Rejecting the Opinion of Dr. Deckey</u>

3　　　　　The ALJ complied with <u>Magallanes</u> and provided specific and legitimate reasons

4　for rejecting the opinion of Plaintiff's treating physician, Jeffrey Deckey, M.D., that are

5　supported by the entire record.　The ALJ detailed the findings and opinions of Dr.

6　Deckey, and stated as follows:

7　　　　　　The undersigned gives little weight to Dr. Decker's [sic] opinion
　　　　　　　because it is overly restrictive and not supported by his own
8　　　　　　clinical findings.　Dr. Deckey only saw the claimant two or three
　　　　　　　times, and his examinations revealed little evidence to support
9　　　　　　limitations in lifting and carrying.　In fact, he noted the claimant
　　　　　　　was not taking any pain medications in July 2015, she was doing
10　　　　　　quite well in October 2015, and she was able to sit constantly
　　　　　　　after the surgery in 2015 (Exhibits 10F, 23F).
11　(AR 19).

12　　　　　Rather, the ALJ determined to give great weight to the opinion of Eric Schmitter,

13　M.D., the medical expert who testified at the hearing.　The ALJ recognized that,

14　generally, the opinions of non-examining medical sources are entitled to less weight

15　than the opinions of treating and examining sources.　However, the ALJ stated:

16　　　　　　In this case, Dr. Schmitter is an impartial medical expert Board
　　　　　　　certified in orthopedic surgery (Exhibit 17F).　His assessment is
17　　　　　　based on his review of the evidence of record through exhibit
　　　　　　　25F.　Dr. Schmitter cited specific evidence in the treatment
18　　　　　　records to support his opinions.　He has an understanding of
　　　　　　　Social Security disability programs and requirements.　Most
19　　　　　　importantly, Dr. Schmitter's statements are well reasoned and
　　　　　　　generally consistent with the record as a whole.　For these
20　　　　　　reasons, the undersigned gives great weight to Dr. Schmitter's
　　　　　　　medical opinions.
21

22　(AR31).　Therefore, the ALJ explained this decision by weighing the medical opinions

23　against her review of all Plaintiff's medical records in evidence, including Plaintiff's

24　treating physician's own prior reports that she found to be contradictory to his asserted

opinion.  <u>See</u> 20 C.F.R. § 404.1527(c)(2)-(6); <u>Batson v. Comm'r of Social Security</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly gave minimal weight to treating physician opinions that were based on the claimant's subjective complaints, were unsupported by the objective evidence, contradicted by other statements and assessments, and were in the form of a checklist).

Plaintiff contends it was improper for the ALJ to discount Dr. Deckey 's opinion based on his only seeing Plaintiff two or three times, when Dr. Deckey is associated with a medical facility that has treated Plaintiff since 2014.  [Dkt. No. 17, Joint Stipulation, 8].  The ALJ, however, gave the specific and legitimate reason that he found Dr. Schmitter's review of the entire of Plaintiff's medical records to be a more thorough basis for assessing Plaintiff's medical condition than simply basing an opinion on two or three medical visits.  Indeed, Dr. Deckey makes no mention in his October 10, 2016 report that he has based his opinion on, or even reviewed, any of Plaintiff's medical records, other than his own, associated with his medical facility.  (AR 1127-1131).

Plaintiff further contends that the ALJ improperly "cherry picked" only portions of Dr. Deckey's opinion which she found problematic and did not give weight to other parts of the opinion.[10]  The ALJ, however, was not required to make detailed findings of every single aspect of Dr. Deckey's report.  The ALJ simply weighed all of the evidence and gave greater weight to Dr. Schmitter, while providing sufficient specific and legitimate reasons, as set forth above, in her decision for giving less weight to Dr. Deckey.  <u>See</u> <u>Peterson v. Colvin</u>, 668 F. App'x. 278, 279 (9th Cir. 2016) (finding ALJ had

---

[10] Plaintiff contends the ALJ provided a limited discussion of Dr. Deckey's report, however, Plaintiff does not dispute the ALJ's specific finding that Dr. Deckey's treatment notes lack any support for his carrying and lifting limitations.

improperly discounted opinion of treating physician where the ALJ "failed to specifically identify *any* objective medical evidence or activities that undermine [the treating physician's] opinion").

Plaintiff also argues it was error for the ALJ not to challenge Dr. Schmitter on many of his opinions that Plaintiff contends the ALJ simply accepted as fact. As an example, Plaintiff points to Dr. Schmitter's testimony that Plaintiff did not need a cane, contending that "this was a direct contradiction to the evidence of record that showed that Plaintiff __needed__ 'Standard Walker' or 'Crutches (AR 1184, 1186, 1188 an[sic]1198)." [Dkt. No. 17, Joint Stipulation, 7 (emphasis added)]. Contrary to this assertion, however, there is no evidence in the record that Plaintiff __needed__ a walker or crutches. As Defendant points out, the evidence cited to by Plaintiff is vague, at best. Plaintiff relies on physical therapy notes in her argument, which each treatment note contains a "Subjective" portion and has what appears to be a standard category to be completed of "Durable Medical Equipment." In response on each of Plaintiff's treatment dates is written "Standard Walker; (Crutches)." (e.g., AR 1159). Further responses in the physical therapy notes, however, provide no indication of Plaintiff using a walker or crutches. In fact, the notes indicate that "[Plaintiff] went hiking over the weekend and only felt sore afterwards, no complaints during the actual hike" and was "able to negotiate 36 stairs using step-to pattern without pain" (AR 1159); "[Plaintiff] reports no pain and felt good over the weekend" and was "able to negotiate 36 stairs using step-to pattern without pain" (AR 1161); "Knee feels ok, but during a job interview on Monday PM, [Plaintiff] had to negotiate 36 stairs in heels for a job interview" (AR 1165)[11];

---

[11] Plaintiff claims that Defendant cited to exhibits, including AR 1165, and that "a review of these cited exhibits states nothing about Plaintiff negotiated stairs in 'heels.'" [Dkt.

Plaintiff "walked about 4 hrs yesterday through the swapmeet" (AR 1175); and Plaintiff "did report on Friday that she had to negotiate 20 stairs and had no pain."  (AR 1184).

There is also much discussion by Plaintiff as to Dr. Schmitter's characterization of an April 2016 electrodiagnostic study.  But, as with the issue of crutches, the medical evidence regarding this study is conflicting and the ALJ reviewed all medical opinions and records in making her determination.  Even though the ALJ's opinion is well-supported by the medical records, Plaintiff would like for the conflicting medical opinions to be weighed in her favor. But, it is the ALJ who is the "final arbiter with respect to resolving ambiguities in the medical evidence." <u>Tommasetti</u>, 533 F.3d at 1041; <u>see also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9thCir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.")  The Court concludes that the ALJ provided "specific and legitimate" reasons based on substantial evidence for her giving little weight to Plaintiff's treating physician's opinions.

### D. <u>Whether the ALJ Properly Evaluated Plaintiff's Testimony</u>

Plaintiff asserts that the ALJ improperly evaluated her credibility and subjective complaints.  Defendant contends that the ALJ appropriately found Plaintiff's testimony not fully supported by the record.

#### 1. <u>Legal Standard for Evaluating Claimant's Testimony</u>

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to

---

No. 17, Joint Stipulation, 19].  The Court has found that Plaintiff's physical therapy notes of March 13, 2013, specifically state that Plaintiff reported having to negotiate 36 stairs in heels for a job interview.  (AR 1165).

produce some degree of the alleged symptoms.  Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain.  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted)).  Defendant does not contest, and thus appears to concede, that Plaintiff carried her burden of producing objective medical evidence of her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton, 331 F.3d at 1040.   To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so."  Brown–Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his

or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 15 947, 958-59 (9th Cir. 2002) (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

### 2. The ALJ provided Clear and Convincing Reasons Supported by Substantial Evidence

Having carefully reviewed the record, the Court finds that the ALJ provided specific clear and convincing reasons for discounting Plaintiff's subjective complaints.[12] The ALJ found that Plaintiff's subjective complaints were not consistent with her treatment history or daily activities, that there is conflicting evidence in the record of Plaintiff's return to work in 2014 and that she was not fully compliant with her prescribed treatments. (AR 21-22).

The ALJ performed a thorough review and analysis of Plaintiff's entire medical record and found Plaintiff's testimony inconsistent with the medical records. (AR 17-21). The ALJ found that Plaintiff's treatment history revealed that the treatments she received have generally been successful in controlling her symptoms, such as the improvement reported in her physician treatment and physical therapy notes. Indeed, the ALJ cited to specific exhibits throughout the record evidencing Plaintiff's improvement with treatment. (AR 21-22). Plaintiff argues that the treatment history

---

[12] The ALJ did not make a finding of malingering in her opinion. (AR 10-29). Thus, in discounting Plaintiff's subjective complaints, the ALJ was required to articulate specific, clear and convincing reasons. See Benton, 331 F.3d at 1040; Brown-Hunter, 806 F.3d at 489.

does not show success as she has undergone multiple surgeries and injections for her condition. This, however, does not contradict the ALJ's pointing to specific evidence in the record stating improvement in Plaintiff's condition after undergoing the treatments. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (noting that impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits). Thus, the ALJ provided specific, clear and convincing reasons why Plaintiff's treatment history, set forth in the medical records, does not support her subjective complaints.

In addition, the ALJ discounted Plaintiff's subjective complaints on the basis that she was not fully compliant with her prescribed medications and treatment. (AR 22). Plaintiff takes issue with this reason as she argues the ALJ ignored the fact that she did undergo numerous medical procedures, such as surgeries and steroid injections, for her condition. Once again, however, the ALJ did cite to specific examples in the medical record of non-compliance by Plaintiff. And while Plaintiff argues that the surgeries and injections show she was compliant, she does not dispute any of the specific instances of non-compliance highlighted by the ALJ in her decision. Thus, there was no error in the ALJ providing non-compliance as a reason for discounting Plaintiff's subjective complaints. See 20 C.F.R. § 404.1530(a), (b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled); Bunnell, 947 F.2d at 346 (failure to follow prescribed treatment is a relevant ground for finding a claimant not credible).

In discounting Plaintiff's complaints, the ALJ also relied upon the fact that after Plaintiff claimed to be disabled, she attempted to return to full-time work for four months in 2014. The ALJ cited to Plaintiff's testimony at the hearing wherein she stated

that she only stopped working because she underwent another surgery, but she would have otherwise continued to work. (AR 22). The ALJ argued that Plaintiff's stated ability to work during the four-month period, indicates that her alleged symptoms were greater than she generally reported. Plaintiff contends that because her employment in 2014 was found to be an "unsuccessful work attempt", it is improper for the ALJ to use this work attempt to discount her credibility. The ALJ simply stated, however, that the Plaintiff's ability to work full-time during this four-month period and only stopping due to surgery, indicates that Plaintiff may have exaggerated her claimed symptoms. See Carter v. Astrue, 472 F. App'x. 550, 552 (9th Cir. 2012) (unpub.) ("the fact that [claimant] continued working past his alleged onset date forms a valid basis for doubting his veracity").

Finally, the ALJ also found that Plaintiff's daily activities, particularly as reported in her physical therapy notes such as "light house cleaning, camping, walking around at a swap meet for 4 hours, working full-time, and walking throughout the day to attend meetings and meet with staff" undermine her testimony. (AR 22-23). Indeed, the ALJ pointed out that, "[i]n March 2013, the claimant reported she had to negotiate 36 stairs in heels going to a job interview (Exhibit 26/F)." (AR 23). Although Plaintiff takes issue with this, an ALJ is permitted to consider daily living activities in her credibility analysis. See 20 C.F.R. § 404.1529(c)(3) (daily activities are a relevant factor which will be considered in evaluating symptoms); see also Burch, 400 F.3d at 681. In Burch, the Ninth Circuit noted, "[a]s this Court previously has explained, if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." Id.; see also Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In

reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors").  Thus, the ALJ's including the consideration of Plaintiff's daily activities as reported in her medical records, into her finding that Plaintiff was not disabled as defined by the Social Security Act, was proper.  See Thomas, 278 F.3d at 958 (citation omitted) (ALJ may consider inconsistencies in claimant's testimony when weighing the claimant's credibility).

Based on the clear, convincing and specific reasons for partially rejecting Plaintiff's pain and limitations testimony and the substantial evidence to support her determination, the Court concludes that the ALJ did not commit error in discounting Plaintiff's testimony.

## V.      CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice.  Judgment shall be entered accordingly.


DATE: June 18, 2019


                /s/ Autumn D. Spaeth
                THE HONORABLE AUTUMN D. SPAETH
                United States Magistrate Judge